Robert A. Simon
State Bar No. 18390000
**WHITAKER CHALK SWINDLE**
**& SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0543
Facsimile: (817) 878-0501
**Attorneys for Debtors**
**PS Properties, LLC, et al.**


## IN THE UNITED STATES BANKRUTPCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO:  24-60443-MMP** |
| **PS PROPERTIES, LLC,** *et al.*[1] | § | |
| | § | **CHAPTER 11, Subchapter V** |
| **Debtors.** | § | **(Jointly Administered)** |

## DEBTORS' JOINT CHAPTER 11, SUBCHAPTER V,
## PLAN OF REORGANIZATION

TO:    ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO
THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

## ARTICLE I
## INTRODUCTION

### A.    Description and History of the Debtors' Business

Debtor, PS Properties, LLC ("PS Properties"), a Texas limited liability company, owns the land and the buildings for the Inn on the River, a boutique hotel located on the banks of the Paluxy River, at 205 SW Barnard Street, Glen Rose, Texas 76043 (the "Hotel"). The Hotel features 24 guest rooms, a restaurant and bar, and a conference center. Debtor, Roser Properties, LLC ("Roser"), a Texas limited liability company, owns the personal property in the Hotel and manages the Hotel under a Management Agreement. Debtor, Pamela Streeter ("Streeter"), is the Sole Member of PS Properties and Roser and controls those entities. Streeter is also the human being primarily responsible for running the Hotel. Streeter lives at the Hotel and has 35 years of

---

[1] The Debtors are *PS Properties, LLC*, Case No.24-60443; *Roser Properties, LLC*, Case No.24-60444; and *Pamela J. Streeter*, Case No. 24-60445. All pleadings and notices affecting any of the Debtors should be filed in the *PS Properties, LLC* case.

experience in the hospitality industry. The Hotel has operated for many years. PS Properties and Roser acquired the Hotel and its personal property in June 2019. They have operated the Hotel since that time. For purposes of the Plan, PS Properties, Roser, and Streeter will be referred to collectively as the "Debtors" unless there is a reason to distinguish them.

The Debtors acquired the Hotel with an SBA loan from Midwest Regional Bank ("Midwest") in the original principal amount of $888,000 (the "SBA Loan"). The SBA Loan is secured by a Deed of Trust, an assignment of rents, and a security agreement on personal property. PS Properties and Roser are the principal obligors on the SBA Loan, and Streeter is a guarantor. The current balance of the SBA Loan, with accrued interest, is approximately $900,000. The Debtors believe that the Hotel is worth $1,300,000 to $1,500,000. The Debtors fell behind on the SBA Loan due to a slowdown in tourism in Glen Rose, increased operating costs due to inflation, and a substantial increase in the interest rate on the SBA Loan, which floats 2.75 percent points above the Prime Rate. The original interest rate on the SBA Loan was 7%. By mid-2024, the interest rate had increased to 11.25%. The higher interest expense substantially reduced the Debtors' net cash flow and contributed to the default. The Debtors filed bankruptcy to prevent a threatened foreclosure on the Hotel and to reorganize their financial affairs in bankruptcy.

Streeter owns a rental property in Melbourne, Florida, which is encumbered by a mortgage in the amount of $10,135.68 (the "Florida Mortgage") Streeter is current on the Florida Mortgage and the property is leased to a tenant. Streeter has substantial equity in the Florida property and anticipates paying off the Florida Mortgage over the five (5) year term of the Plan in accordance with the terms of the loan documents.

The Debtors propose this Joint Subchapter V Plan of Reorganization (the "Plan") and will ask the Court to confirm it. The Plan proposes to pay administrative claimants or priority claimants over a period not to exceed six (6) months. The Plan proposes to restructure the SBA Loan, based upon a new Plan note (the "Plan Note") in the principal amount of $900,000. The $900,000 will include post-petition accrued, but unpaid interest. The Plan Note would be amortized over 30 years, at a fixed interest rate of 7.5%, but would mature in five (5) years. At or before maturity, the Debtors would be required to sell the Hotel or refinance the debt and pay off the Plan Note. The Plan proposes to pay the Florida Mortgage according to its existing terms. The Plan proposes to pay the general unsecured creditors of the Hotel 100% of their Allowed Claims, without interest, over three (3) years in 36 equal monthly payments. The Plan proposes to pay Streeter's personal unsecured creditors 50% of their Allowed Claims over five (5) years in 60 equal monthly payments. The classes containing the Secured Claim of Midwest and the two (2) classes of unsecured claimants would be impaired under the Plan. The class containing the Secured Claim represented by the Florida Mortgage would be unimpaired. Streeter would retain her equity interests in PS Properties and Roser and would continue running the Hotel.

## Explanation of Chapter 11

Chapter 11 is the primary reorganization chapter under the Code. The Debtors own and operate the Hotel, which is a small business. The Debtors decided to proceed under Subchapter V – Business Debtor Reorganization ("Subchapter V"). Under Subchapter V, the Debtors are permitted to reorganize their business for the benefit of their creditors, equity interest holders, and themselves. As required by the United States Bankruptcy Code (the "Code"), the Plan places claims in various classes and describes the treatment each class will receive. After such Plan has been filed, it must be accepted by claimholders and equity interest holders or determined by the Court to be fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

## Explanation of the Confirmation Process

Acceptance of the Plan by the Creditors and Equity Interest Holders is important. Here, Streeter is the equity interest holder in PS Properties and Roser. She supports the Plan, and she is deemed to accept it. The issue will be acceptance by creditors. In order for the Plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As set forth above, a Chapter 11, Subchapter V 11 plan does not require that each holder of a claim against, or interest in, the Debtors vote in favor of the plan in order to be confirmed by the Court.

Confirmation of the Plan discharges the Debtors from all of their pre-confirmation debts and liabilities except as expressly provided for in the plan and Sections 1141(d) and 1192 of the Code. Confirmation makes the Plan binding upon the Debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

## Voting Procedures

**Administrative Claims.** Administrative Claims are not classified and do not vote under the Plan.

**Unimpaired Classes**. The Debtors are not aware of any priority claims, as all pre-petition wage claims and payroll taxes have been paid. To the extent that any priority claims remain, they are unimpaired by the Plan and not entitled to vote. Class 4 consists of the secured claim of NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("NewRez"), which holds the Florida Mortgage on Streeter's rental house in Melbourne, Florida. The Plan provides that Streeter will continue to pay the Florida Mortgage according to its terms. Accordingly, the Class 4 secured claim of NewRez is unimpaired and deemed to accept the Plan.

**Impaired Classes**. The Claimants in Classes 3, 5, and 6 are impaired as defined by Section 1124 of the Code. The Claimants in those Classes are entitled to vote on the Plan. The Debtors will send ballots to those Claimants. Completed ballots should be returned to the Debtors' counsel, Robert A. Simon, Whitaker Chalk Swindle & Schwartz PLLC, 301 Commerce Street, Suite 3500, Fort Worth, Texas 76102 by hand delivery, commercial courier, First Class U.S. Mail. The Debtors will also accept a scanned image of completed ballots sent via email to rsimon@whitakerchalk.com.

## Summary of Plan

The Plan provides for the Debtors to continue their business of running the Hotel. The Debtors will restructure the secured claim of Midwest through the Plan Note. The Debtors will have five (5) years to pay off the Plan Note either by selling the Hotel or refinancing the debt. Streeter will continue paying the Florida Mortgage according to its contractual terms, using the rental income generated by that property. The Debtors will pay the general unsecured creditors of the Hotel 100% of their Allowed Claims in 36 equal monthly installments. Streeter will pay her unsecured creditors 50% of their Allowed Claims over three (3) years in 36 equal monthly installments. The Debtors will continue in business and use cash flow generated by the Hotel and by rental income from the Florida property to fund the payments required by the Plan.

## Best Interests of Creditor Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtors' creditors. Accordingly, the proposed Plan must provide the Debtors' creditors with more than they would receive in a Chapter 7 liquidation. Under the Plan, the two secured creditors, Midwest and NewRez, will be paid the full amount of their secured claims and will retain their liens on their collateral until paid. The unsecured creditors of Roser, i.e., the Hotel, will be paid the full amount of their Allowed Claims, without interest, over three (3) years in equal monthly payments. Streeter's personal unsecured creditors will be paid 50% of their Allowed Claims over five (5) years in equal monthly payments. As a going concern, the Hotel is worth $1,300,000 to $1,500,000, with significant equity. In a Chapter 7 liquidation, the Debtors' equity in the Hotel and all income from operations would be lost and the Debtors' unsecured creditors would receive little or nothing. Accordingly, the Plan proposes to the Debtors' creditors more than such creditors would receive in a

Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE II
## DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used by the United States Bankruptcy Code shall have the meaning assigned to such term in the Code.

1. **"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2. **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtors (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtors nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3. **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtors, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4. **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtors (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtors nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of

creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5.      **"Bar Date"** shall mean the date fixed by the Court or other rule as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6.      **"Case"** shall mean this jointly administered Chapter 11 case.

7.      **"Claim"** shall mean any right to payment from the Debtors as of the date of entry of the Order Confirming Plan, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8.      **"Claimant"** shall mean the holder of a Claim.

9.      **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10.     **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11.     **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12.     **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13.     **"Court"** shall mean the United States Bankruptcy Court for the Western District of Texas, Waco Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14.     **"Creditor"** shall mean any person having a Claim against Debtors.

15.     **"Debt"** shall mean any obligation of Debtors, alone, and any obligation of Debtors and any other Person, to any Entity.

16.    **"Debtors"** shall mean PS Properties, LLC, Roser Properties, LLC, and Pamela Streeter.

17.    **"Disbursing Agent"** shall mean the Reorganized Debtors.

18.    **"Effective Date"** The effective date of this Plan is the first business day following 30-days after the "Confirmation Date," unless an objecting party obtains a stay pending appeal.

19.    **"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

20.    **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

21.    **"Petition Date"** shall mean the date on which the Debtors filed their Chapter 11 Subchapter V case, which is August 5, 2024.

22.    **"Plan"** shall mean this Joint Subchapter V Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

23.    **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

24.    **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

25.    **"Reorganized Debtors"** shall mean the Debtors upon confirmation of the Plan as provided herein.

26.    **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

27.    **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183, in this case, Brad Odell.

28.     **"Substantial Consummation"** shall occur when the Reorganized Debtors commence payments to creditors as provided in this Plan.

29.     **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.  The Debtors are not aware of any unpaid Tax Claims.

30.     **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

**ARTICLE III**
**REPRESENTATIONS**

**NO REPRESENTATIONS CONCERNING THE DEBTORS ARE AUTHORIZED BY THE DEBTORS OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTORS RECOMMEND THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR THE DEBTORS WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THE DEBTORS BELIEVE THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTORS' ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTORS URGE THAT CLAIMANTS VOTE FOR THE PLAN.**

**THE DEBTORS DO NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.**

## ARTICLE IV
## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

The Debtors acquired the Hotel in June 2019, with the proceeds of the SBA Loan from Midwest. The Debtors have run the Hotel since that time. Obviously, the COVID-19 pandemic was a challenge, as it temporarily reduced occupancy across the hospitality industry. The Debtors weathered that storm but got into financial trouble in 2023 due to three factors: (1) a temporary ineffectiveness in the local tourism office in Glen Rose, Texas, which resulted in less tourism overall; (2) increased operating costs due to rapid inflation; (3) a sharp increase in the interest rate on the SBA Loan from Midwest. The SBA Loan has an adjustable interest rate that floats 2.75 percentage points above the Prime Rate. When the Debtors contracted for the SBA Loan in 2019, the interest rate was 7%. By the Petition Date, the interest rate had risen to 11.25%. Though the Hotel remained cash flow positive on an operating basis, the much higher interest rates soaked up the positive cash flow and caused the Debtors to default on the SBA Loan. Midwest posted the Hotel for an August 2024 foreclosure, which prompted the Debtors' bankruptcy filings. To help the Hotel, Streeter did not pay herself a salary or take any distributions. Nonetheless, she had living expenses and used her credit cards to pay for living expense and certain Hotel expenses. The combination of those factors caused her credit card balances to increase over time. By the Petition Date, Streeter had substantial personal credit card debt. However, the Debtors' total obligations remain far below the current $3,025,000 debt ceiling for Subchapter V.

The Debtors' financial circumstances are improving. The leadership has changed in the Glen Rose, Texas tourist office. As a result, local tourism and occupancy in the Hotel are improving. The rapid inflation of 2022 and 2023 has abated. The Hotel remains cash flow positive on an operating basis. Interest rates have peaked and are starting to decline. The Debtors believe that they can reorganize successfully by restructuring the SBA Loan, paying the Florida Mortgage according to its pre-petition terms, paying the Hotel's unsecured creditors 100% of their Allowed Claims over time and paying Streeter's unsecured creditor 50% of the Allowed claims over time.

Accordingly, Subchapter V relief is appropriate and the Plan feasible.

## Future Income and Expenses Under the Plan

The Debtors' bankruptcy cases were filed on August 5, 2024. The Debtors elected Subchapter V treatment and moved for joint administration, which was granted. The Debtors are operating under an agreed cash collateral order and 13-week budget. The Hotel is performing as projected, and the Debtors are generally meeting their budget. The Debtors anticipate having enough business and cash available to fund the Plan and pay the creditors as proposed in the Plan. It is anticipated that after confirmation, the Debtors will continue in business. At the end of five (5) years, the Debtors will need to sell the Hotel or refinance the indebtedness and pay off the Plan Note. Based upon their projections, the Debtors believes they can service the debt to the creditors.

## Post-Confirmation Management

The Debtors will continue managing the Hotel after confirmation. Streeter will remain the person with primary responsibility. Roser will pay Streeter a salary of $750 per month for her work so that she can make the distributions to her creditors under the Plan.

## Miscellaneous Disclosures

Notwithstanding anything herein to the contrary, any payment made or to be made by the proponent, by the Debtors, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the Court as reasonable.

The Debtors have no directors, officers or voting trustees. Streeter is a natural person. She is the Sole Manager of PS Properties and Roser and controls those entities. The Debtors have no domestic support obligations. There are no non-debtor affiliates of the Debtors participating in this Plan. Roser employs seven (7) employees to assist in running the Hotel and its associated restaurant and bar. After the Effective Date, all retiree benefits of the Debtors, if any, shall continue for the duration of the period the Debtors have obligated themselves to provide such benefits. There are no successors to the Debtors under this Plan. There are no governmental regulatory commissions or agencies with jurisdiction, after confirmation of this Plan, over any rates of the Debtors. No liquidation or need for further financial reorganization is contemplated under this Plan. No transfers of property are contemplated under the provisions of this Plan within the meaning of 11 U.S.C. § 1129(a)(16).

## ARTICLE V
## VALUATION OF PROPERTY AND LIQUIDATION ANALYSIS

## Going Concern Value of Hotel and Value of Florida Rental Property

The Hotel is an operating business that generates a positive cash flow through renting hotel rooms, selling food and beverages in its restaurant, and hosting events in the conference center. As a going concern, the Debtors' Hotel business is worth $1,300,000 to $1,500,000. The balance owed on the SBA Loan is approximately $900,000. There is $400,000 to $600,000 in equity in the Hotel, but only if it remains open for business. The Hotel generates a positive cash flow, which the Debtors will use to service the Plan Note, pay administrative claims, and make distributions to unsecured creditors over time.

### Liquidation Analysis and Valuation of Non-Exempt Assets

In a Chapter 7 liquidation, the closed Hotel would be worth perhaps $700,000.[2] Streeter's rental house in Florida is worth $173,740 at fair market value, though it is subject to a first lien mortgage in the amount of $10,135. The Florida rental house also would be worth substantially less in a Chapter 7. Midwest holds a second lien mortgage on the rental house in Florida to further secure the SBA Loan on the Hotel. In a Chapter 7, the Debtors would lose all of their equity in the Hotel and most or all of the equity in the Florida rental property. NewRez would be paid the full amount of the Florida Mortgage from the equity in the Florida rental property, but all remaining equity would be paid to Midwest to cover the deficiency from the liquidation of the Hotel. The Debtors' general unsecured creditors would receive little or nothing.

A full liquidation analysis is attached to the Plan as Exhibit "A" and is incorporated herein by reference. The Plan conforms with all requirements of Chapter 11 Subchapter V, including the provision that all creditors will receive at least as much under the plan as they would in a Chapter 7 liquidation.

### ARTICLE VI
### MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtors will continue to operate the Hotel, and Streeter will continue to lease out her rental property in Florida. The Debtors will execute the Plan Note to Midwest and perform under that obligation. A true and correct copy of the form of the Plan Note is attached hereto, incorporated herein by this reference, and marked as Exhibit "B." The Debtors' Plan will break the existing claims into six (6) classes of Claimants and one class of equity owners, *i.e.,* Streeter. The Classes will consist of: (1) Administrative Claimants; (2) Priority Claimants, if any; (3) the Secured Claim of Midwest; (4) the Secured Claim of NewRez; (5) the General Unsecured Claims against Roser, as the operator of the Hotel; (6) the General Unsecured Claims against Streeter individually; and (7) Equity Interests. The Debtors intend to pay the allowed claims of the Subchapter V Trustee in cash from the monthly deposit he has received. The Debtors intend to pay Estate Professionals (Debtors' counsel) and holders of priority claimants, if any, in cash when Claims are allowed by the Court, to extent sufficient cash is available.[3] Otherwise, the Debtors will pay the Estate Professionals over twelve months in twelve (12) equal

---

[2] In a Chapter 7, the Hotel would be forced to close, and its going concern value would be lost.

[3] Debtors' counsel holds a small retainer balance of $3,994.52, that would be used for this purpose. It is anticipated that the Debtors will have some amount of cash, as well.

monthly installments, beginning on or before January 31, 2025. The Debtors will pay Midwest in accordance with the Plan Note and NewRez according to the terms of the pre-petition loan documents. The Debtors will pay the holders of Class 5 Unsecured Claims 100% of their Allowed Claims, without interest, in 36 equal monthly installments over three (3) years, using cash flow from the Hotel. Streeter will pay the holders of Class 6 Unsecured Claims 50% of their Allowed Claims in 36 equal monthly installments over three (3) years, using her salary and/or rental payments from the Florida rental property. Roser will pay Streeter $750 per month in salary for managing the Hotel so that she can pay the Class 6 Claimants under the Plan.

**Satisfaction of Claims and Debts:** The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole and exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtors. On the Confirmation Date, the Reorganized Debtors shall assume all duties, responsibilities, and obligations for the implementation of this Plan.

**Class 1 Claimants (Allowed Administrative Claims of Professionals and Subchapter V Trustee)** are unimpaired. Professional fees are subject to approval by the Court as reasonable. The Subchapter V Trustee will be paid from his Court-ordered monthly deposit on the Effective Date of this Plan, or as soon thereafter as his fees are approved by the Court. If the deposit is not sufficient, the Debtors shall pay the difference on the Effective Date or within 14 days after Court approval of such fees. The Court-approved attorneys' fees of Debtors' counsel, Whitaker Chalk Swindle & Schwartz PLLC ("Whitaker Chalk") will be paid immediately following approval by the Court out of the available cash, to the extent sufficient cash is available from Whitaker Chalk's remaining retainer and/or the Debtors' available funds. To the extent sufficient funds are not available, the Debtors will pay the balance of Whitaker Chalk's fees over twelve (12) months in six (6) equal monthly installments, beginning on or before January 31, 2025. The Debtors' case will not be closed until all allowed Administrative Claims are paid in full. The Class 1 Administrative Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $62,500.00, of which approximately $42,500 should be satisfied from the pre-petition retainer paid to Whitaker Chalk or the post-petition deposit paid to the Subchapter V Trustee. The Class 1 Claimants are not impaired under this Plan. All Fee Applications for allowance of professional fees must be filed no later than 45 days after the Effective Date of the Plan.

**Class 2 Claimant – (Priority Claims, if any).** The Debtors are not aware of any priority claims, except possibly local property taxing authorities, whom the Debtors will pay in the ordinary course. To the extent that priority claims exist, the Debtors will pay the allowed Priority Claims in full, in cash, on the Effective Date or in the ordinary course before such taxes or other priority expenses become delinquent.

**Class 3 Claimant – (Secured Claim of Midwest Regional Bank).** The Debtors will execute and perform the Plan Note, in the form attached hereto as Exhibit "B." The Debtors' execution and performance of the Plan Note shall satisfy the Class 3 Claim in full. All pre-petition security documents, including the Deed of Trust on the Hotel, the Security Agreement on the personal property of Roser, and the second lien mortgage on the Florida rental property shall remain in place until the Plan Note is repaid. Streeter shall personally guaranty the Plan Note. The Class 3 Claim is impaired. Midwest will be entitled to recover its reasonable attorneys' fees and costs, which the Debtors will pay in twelve (12) equal monthly installments, beginning 30 days after such claim is Allowed. Midwest shall provide a good faith estimate of its fees no later than seven (7) days before the scheduled hearing on Plan confirmation. The purpose of the Plan, the Debtors estimate Midwest's fees to be $20,000. Midwest shall submit in writing to the Debtors, the Subchapter V Trustee, and the U.S. Trustee a proposed final fee bill within 14 days after Plan confirmation. If the Debtors, the U.S. Trustee, and/or the Subchapter V Trustee do not object within 14 days, the proposed bill will be deemed unopposed and Allowed in that amount. If an objection is file, either the objecting party or Midwest may set a hearing for a determination of the final Allowed amount. Any objection may also be resolved by mutual agreement. For purposes of the Plan, the Debtors estimate Midwest's fees to be $20,000.

**Class 4 Claimant – (Secured Claim of NewRez).** Streeter shall perform the obligation of the Florida Mortgage in accordance with pre-petition loan documents. Streeter's full performance of the pre-petition loan documents shall satisfy the Class 4 Claim in full. NewRez shall retain its lien on the Florida rental property until the Florida Mortgage is paid in full at which point the Claim shall be fully satisfied. The Class 4 Claim is unimpaired.

**Class 5 Claimants – (Allowed Unsecured Claims against Roser).** Roser will satisfy the Class 5 General Unsecured Claims by paying such Claimants 100% of their Allowed Claims, without interest, over three (3) years from the Effective Date in 36 equal monthly installments. Upon completion of the payments, such Claims shall be satisfied in full.

**Class 6 Claimants – (Allowed Unsecured Claims against Streeter).** Streeter will satisfy the Class 6 General Unsecured Claim against her individually by paying such Claimants 50% of their Allowed Claims over five (5) years from the Effective Date in 60 equal monthly installments. Upon completion of the payments, such Claims shall be satisfied in full.

* If any creditor has not filed a proof of claim, the Debtors reserve their right to continue to dispute any claim and their right to change the treatment of those claims after the proof of claim bar date.

**Class 7 Equity Interest Holder – (Current Owner).** Streeter shall retain her equity interest in PS Properties and Roser and any other non-exempt property.

## ARTICLE VII
## CLAIMS OBJECTION PROCESS

### Claims Bar Date.

The Bar Date for all creditors or interest holders, other than governmental units, to file proofs of claim with the Bankruptcy Clerk was October 15, 2024. The Bar Date for governmental units to file Proofs of Claim with the Bankruptcy Clerk is not later than 180 days from Petition Date.

### Effect of Bar Date.

In accordance with Bankruptcy Rule 3003(c), any entity or Person whose Claim was listed in the Schedules, or holds a Contingent Claim, Unliquidated Claim, or Disputed Claim, and did not file a proof of Claim before the Bar Date, shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

### Standing.

Following the Effective Date, the Debtors shall have standing to object to Claims and reserve the right to do so. The Debtors shall not object to the Class 3 Secured Claim of Midwest, as the Debtors have specifically agreed to the terms of the Plan Note. However, the Debtors may object to the reasonableness of the Midwest's Claim for attorneys' fees and costs.

### Objection Deadline.

Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, and accept as otherwise stated herein, the Debtors may object to any Claim and shall serve a copy of each such objection upon the holder of the Claim to which such objection pertains ("Disputed or Undetermined Claim"). Unless arising from an Avoidance Action, any Proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed or Undetermined Claim may be litigated to Final Order. The Debtors may compromise and settle any Disputed or Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed or Undetermined Claim after the Effective Date.

### Allowance of Claims.

At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Claim.

## ARTICLE VIII
## EFFECT OF CONFIRMATION OF PLAN AND INJUNCTION

**A.** **Effective Date and Notice.**

The Effective Date of the Plan shall be the first business day following 30 days after the "Confirmation Date," unless an objecting party obtains a stay pending appeal.

On or before ten (10) Business Days after the occurrence of the Effective Date, the Debtors shall mail or cause to be mailed to all holders of Claims a notice that informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; and (c) such other matters that Debtors deem appropriate. However, in lieu of sending notice by First Class Mail, the Debtors may send such notice by email to the attorney of record for any holders of Claims who have made an appearance in the Debtors' jointly administered case.

**B.** **Binding Effect of Plan.**

Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtors, all Creditors, all Equity Interest holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is Impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan. This provision includes all successors and assigns of the parties named herein.

**C.** **Vesting of Assets.**

Upon the Effective Date, all assets of the Estates shall vest in the Debtors, except as otherwise provided in the Plan.

**D.** **Discharge.**

1. **Consensual Plan**

A consensual plan is one in which the Debtors have met all requirements of § 1129(a) of the Bankruptcy Code except for paragraph (15) but including acceptance of the Plan by all classes of creditors entitled to vote. If the Debtors' Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtors will not be discharged from any debt created or other obligation imposed by this Plan. Nor will the discharge under the Plan affect the statutory lien(s) on the Hotel, the personal property in the Hotel, or the Florida rental property for *ad valorem* property taxes. All such statutory liens shall remain unaffected.

2.    **Non-consensual Plan**

A non-consensual plan is one in which the Debtors meet all requirements of §
1129(a)of the Bankruptcy Code except for paragraphs (8), (10), and (15) of section 1129.
In the event the Debtors are unable to get all impaired classes of creditors to vote in favor
of the Plan, the Debtors will ask the Court to confirm the Plan pursuant to § 1191(b) of
the Bankruptcy Code.  In the event of non-consensual confirmation, the Debtors will be
entitled to receive a discharge upon completion of all payments required by the Plan, as
provided in 11 U.S.C. § 1192.  The discharge under Section 1192 does not apply to the
Debtors' obligations under the Plan or to statutory liens for *ad valorum* property taxes.

E.    **Injunction Against Interference with Plan.**

Upon the Effective Date, all holders of Claims and all other parties in interest in
the Bankruptcy Case, along with their respective current and former officers, directors,
principals, employees and agents, shall be and are hereby enjoined from taking any
action to interfere with the implementation or consummation of the Plan. So long as the
Debtors otherwise comply with the terms Plan Note, no "deem insecure" provisions of
the Plan Note or Deed of Trust shall be enforceable.  Additionally, all holders of Claims,
all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case
shall be enjoined from seeking payment on their Claims or Interest except as otherwise
provided in the Plan.

F.    **Payments under the Plan.**

Regardless, if the Debtors obtain confirmation of the Plan pursuant to § 1191(a)
or (b) of the Bankruptcy Code, the Debtors shall make all payments required under the
Plan directly to the creditors of the Estate once the creditors' Claims become an Allowed
Claim.   The Debtors assert that cause exists to allow the Debtors to make all Plan
payments, without a separate disbursing agent, as this will reduce administrative costs
and provide assurance the Debtors are better able to monitor and maintain the cash flow.
The Debtors run an ongoing business and are in a better position to make regular
payments than an outside disbursing agent would be.

**ARTICLE IX**
**MECHANICS/IMPLEMENTATION OF PLAN**

The Debtors anticipate the continued operation of its business and will
provide an income stream to fund the Plan.  Roser will pay Streeter $750 per month
in salary as compensation for running the Hotel so that she may make distributions to
the Class 6 Claimants.  The Debtors believe that $750 per month in compensation is
well below that market rate that the Debtors would have to pay an outside manager to
do the work performed by Streeter.  If the Debtors sell the Hotel before the end of 5
years from the Effective Date, the Debtors shall make any required payments to the
Class 5 and Class 6 Claimants that have not yet been paid under the Plan.

## ARTICLE X
## COMPLIANCE WITH 11 U.S.C. §§1191(B), (C) and (D)
## AND FEASIBILITY OF PLAN

The Debtors' Plan is based upon paying its creditors from their available cash and from projected disposable income, as defined in 11 U.S.C § 1191(d). The projections of disposable income from future business operations are attached hereto as **Exhibit "C."** The Debtors will pay Midwest and NewRez from the revenues of the Hotel and rental income from the Florida rental property. Roser will also pay the Class 5 Unsecured Claimants from the revenues generated by the Hotel. Not including its obligation to Midwest, which will be paid through the Plan Note, Roser's distributions to Class 5 Unsecured Claimants should total approximately $13,000, paid over (3) years in 36 equal monthly installments. In a Chapter 7 liquidation, the Class 5 Claimants would receive nothing. The Class 6 Claims against Streeter total $81,544.30, though some may be subject to objection. Under the Plan, Streeter will distribute an estimated $40,772.15 to holders of Allowed Claims in Class 6 over five (5) years in 60 equal monthly payments of $679.54. Roser will pay Streeter $750 per month in salary to allow Streeter to make the distributions to the Class 6 Claimants. In a Chapter 7 liquidation, the Class 6 Claimants would receive little or nothing. The total amount of distributions under the Plan substantially exceeds the liquidation value of the Debtors' assets, net of liens. Accordingly, the Plan satisfies the best interest of the creditors under 11 U.S.C. § 1129(a)(7). The total payments under the Plan also exceed the Debtors' projected disposable income after debt service. Accordingly, this treatment is fair and equitable within the definition of 11 U.S.C. § 1191(b). The Debtors believe that the projections are accurate based upon the accounts receivable and the work currently on the books. Based upon the projections, the Debtors believe the Plan to be feasible, in that there is a strong likelihood that the Debtors will be able to make all payments required under the Plan.

## ARTICLE XI
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

## ARTICLE XII
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtors' Plan is not confirmed, the Debtors' bankruptcy cases may be converted to cases under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtors for distribution to their Creditors in accordance with the priorities of the Code. Generally, a liquidation or a forced sale yields a substantially lower amount than a going concern value. As set forth above, the Debtors expect to owe approximately $25,000.00 in administrative claims, not covered by the pre-petition retainer. Claims to the administrative creditors must be

paid prior to the unsecured creditors receiving any payment. Furthermore, a Chapter 7 trustee would have his own fees and expenses that would be paid ahead of any distributions to the unsecured creditors. The Class 5 Claimants and Class 6 Claimants would receive little or nothing in a Chapter 7 liquidation.

A liquidation analysis is attached hereto as Exhibit "A".

## ARTICLE XIII
## STATUS OF EXECUTORY CONTRACTS AND LEASES

Unless otherwise rejected before confirmation of the Plan, all unexpired leases and executory contracts of the Debtors, if any, shall be deemed assumed on the Effective Date.

## ARTICLE XIV
## EVENTS OF DEFAULT AND EFFECT THEREOF

Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

Robert A. Simon
Whitaker Chalk Swindle & Schwartz PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102

The Debtors will be entitled to no more than three (3) notices of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay and the Plan injunction as to that creditor shall be automatically terminated without further notice or order from the Court.

## XV.
## DISCHARGE

Except as otherwise stated herein, upon confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan. At such time, the Debtor shall file a motion for entry of discharge and to close the case.

The automatic stay imposed by 11 U.S.C. § 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

Releases of Claims by Holders of Claims: Except as otherwise specifically provided for herein, upon the entry of the Confirmation Order (a) each Person that votes to accept the Plan or is presumed to have voted for the Plan pursuant to Section 1126(f) of the Bankruptcy Code; and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the entry of the Confirmation Order, each Entity or Person, that has held, holds, or may hold a Claim (hereinafter a "Release Obligor"), in consideration for the obligations of Debtors and Reorganized Debtors under the Plan and the case, shall have conclusively, absolutely unconditionally, irrevocably and forever, released and discharged the Debtors from any Claim or claim of action existing as of the entry of the Confirmation Order arising from, based on or relating to, in whole or in part, the subject matter of, or the transaction or event giving rise to the Claim or claim for relief of such Release Obligor, and any act, omission, occurrence or event in any manner related to such subject matter, transaction or obligation; provided, however, that this provision shall not release Debtors from (i) their obligations under the Plan; or (ii) any cause of action held by a Governmental entity existing as of the entry of the Confirmation Order based (a) the Internal Revenue Code or other domestic state, city or municipal tax code, (b) the environmental laws of the United States or any domestic state, city or municipality, (c) any criminal laws of the United States or any domestic state, city or municipality, (d) the Exchange Act, the Securities Act, or other securities laws of the United States or any domestic state, city or municipality, or (e) Sections 1104-1109 and 1342(d) of the Employee Retirement Income Security act of 1974, as amended.

## ARTICLE XVI
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants should be aware that there are risks involved in consummation of the Plan. The Debtors' Hotel may not perform as well as expected. The Plan contemplates that there will be excess funds to pay Creditor Claims. Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against either Debtor that arose prior to the Confirmation Date, unless such action is authorized by this Plan or 11 U.S.C. § 1141.

## ARTICLE XVII
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtors. In this case some of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO**

THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.

## ARTICLE XVIII
## PENDING OR ANTICIPATED LITIGATION

The Debtors have evaluated potential claims which may be brought. The Debtors are not aware of any voidable transfer claims or other litigation claims. However, the Debtors retain the right to pursue voidable transfer claims or other litigation claims, if any come to light.

Dated: November 4, 2024.

Respectfully submitted,

PS Properties, LLC, a Texas limited liability company

By: */s/Pamela Streeter*
Pamela Streeter, Sole Member

Roser Properties, LLC, a Texas limited liability company

By: */s/Pamela Streeter*
Pamela Streeter, Sole Member

By: */s/Pamela Streeter*
Pamela Streeter, Individually

## CERTIFICATE OF SERVICE

I hereby certify, on this 4th day of November 2024, that I served a true and correct copy of the forgoing Debtors' Chapter 11, Subchapter V Plan of Reorganization upon all parties registered to receive service via this Court's ECF notification system, upon the following parties by email, and upon the parties lists on the attached service list by First Class United States Mail:

James W. Brewer – jbrewer@kempsmith.com
Brad W. Odell – bodell@mhba.com
Shane P. Tobin – shane.p.tobin@usdoj.gov
Carolyn Feinstein – Carolyn.Feinstein@usdoj.gov
Gary Wright – gary.wright@usdoj.gov
United States Trustee – ustpregion07.au.ecf@usdoj.gov
Elizabeth Calvo – ebcalvo@bpfcm.com

/s/ Robert A. Simon
Robert A. Simon

Midwest Regional Bank
363 Festus Centre Drive
PO Box 1269
Festus, MO 63028-7269

Alsco Linen Service
1340 East Berry St.
Fort Worth, TX 76119

Amberter Healthcare
Attn:  Legal Dept.
7700 Forsyth Blvd., Centene Plaza
St. Louis, MO 63105

ASCAP
PO Box 331608
Nashville, TN 37203

Atmos Energy
PO Box 650205
Dallas, TX 75265

Ben E. Keith
601 E. 7th Street
Fort Worth, TX  76102

BMI Licensing Dept.
10 Music Square E.
Nashville, TN  37203

Booking.com
4147 Eastern Ave. SE
Suite 100
Grand Rapids, MI 49508

Cherry Road Media
PO Box 1688
Shawnee, OK  74802

City of Glen Rose
401 Grace Street
Glen Rose, TX 76043

Clover
415 N. Mathilda Ave.
Sunnyvale, CA 94085

Cozzini Brothers
100 Northpark Central Dr. #500
Houston, TX  77073

Direct TV
PO Box 5014
Carol Stream, IL 60197

DT Roofing
5900 East US Hwy 377
Suite 102
Granbury, TX  76049

EcoLab
26252 Network Place
Chicago, IL 60673

Expedia
1111 Expedia Group Way
Seattle, WA 98119

First Data Merchant Service
14141 SW Freeway, Suite 300
Sugar Land, TX 77478

George Wayne Mechanical
PO Box 3923
Cleburne, TX 76033

Glen Rose Reporter
PO Box 1198
Brownwood, TX 76804

GoDaddy
2150 E. Warner Road
Chandler, AZ 85284

H&H Storage
1521 W. Highway 67
Glen Rose, TX 76043

Harrington Environmental
1632 Royalwood Circle
Joshua, TX 76058

Home Depot
PO Box 9001043
Louisville, KY 40290

Homebase
835 Howard St., Floor 2
San Francisco, CA  94103

HP Instant Ink
10300 Energy De.
Spring, TX 77389

Intuit
2700 Coast Ave.
Mountain View, CA 94043

K&V Water Service
PO Box 178
Stephenville, TX 76401

Lawn Dr
PO Box 7153
Granbury, TX 76049

Liberty Mutual
175 Berkeley
Boston, MA

Mayfield Paper
Box 3889
San Angelo, TX 76902

Philadelphia Insurance
PO Box 70251
Philadelphia, PA 19176

RexNexus
85 East 200
Salem, UT 84653

Rinnai
Advantage Alliance Program
103 International Dr.
Peachtree City, GA 30269

SanaBenefits
Beam Dental
80 East Rich St.
Columbus, OH 43215

Smith Supply
309 E. Gibbs Blvd.
Glen Rose, TX 76043

Sojern
575 Market St., 4th Floor
San Francisco, CA 94105

Somervell County Tax Assessor
PO Box 305
Glen Rose, TX 76043

Spectrum Business
PO Box 94188
Palatine, IL 60094

Spotify
4 World Trade Center
150 Greenwich St., 62nd Fl
New York, NY 10007

State Farm
1 State Farm Plaza
Bloomington, IL 61710

Sysco
800 Trinity Dr.
The Colony, TX 78714

Texas State Comptroller
PO Box 149356
Austin, TX 78714

The Flood Insurance Agency
5700 SW 34th St, Suite 402-B
Gainesville, FL 32608

Trent Yerigan
122 Donley St.
Tolar, TX 76476

TXU Energy
PO Box 650638
Dallas, TX 75265

Verizon Wireless
PO Box 660108
Dallas, TX 75266

Wright's Ice Service
288 Hubert
PO Box 91
Stephenville, TX 76401

American Express
PO Box 981535
El Paso, TX 79998-1535

Bank of America
PO Box 15284
Wilmington, DE 19850

Citi - Costco
PO Box 790046
St. Louis, MO 63179-0046

Discover – Student Loan
PO Box 30959
Salt Lake City, UT 84130-0959

Finxera Inc.
2975 Regent Blvd.
Suite 100, LB Svcs 208677
Irving, TX 75063

NewRez Mortgage
601 Office Center Dr., Suite 100
Fort Washington, PA 19034

Gary Wright – VIA ECF
US Trustee
903 San Jacinto Blvd., Room 230
Austin, TX 78701

James Brewer – VIA ECF
Kemp Smith LLP
PO Box 2800
El Paso, TX 79999-2800

Shane Tobin, Trial Attorney – VIA ECF
US Trustee's Office
903 San Jacinto Blvd., Room 230
Austin, TX 78701

Brad W. Odell – VIA ECF
Subchapter V Trustee
1500 Broadway, Suite 700
Lubbock, TX 79401

Elizabeth Banda Calvo – VIA ECF
Perdue Brandon Fielder et al
500 E. Border Street, Suite 640
Arlington, TX 76010

# EXHIBIT A

**Liquidation Analysis of PS Properties, LLC.**

This Debtor owns the Hotel and no other significant assets. Midwest has a first lien on the Hotel to secure the SBA Loan. The debt owed is approximately $900,000.

The fair market value of the Hotel as a going concern is $1,300,000 to $1,500,000. The liquidation value of the closed Hotel would be approximately $700,000. The net liquidation value is a negative $200,000.

**Liquidation Analysis of Roser Properties, LLC.**

Roser owns the personal property associated with the Hotel. The fair market value of the personal property is $144,932. In a liquidation, that value decline by at least 50% to $72,466. In a liquidation, that value would go to Midwest to satisfy part of the $200,000 deficiency from the liquidation the Hotel, leaving a net deficiency of approximately $127,534, before taking into account the cost of liquidation and administration.

**Liquidation Value of Pamela Streeter's Assets.**

Pamela Streeter's personal property is mostly exempt. The exceptions are her interest in a rental house Melbourne, Florida worth $173,740 and one vehicle, a 2001 Chevrolet pick-up truck worth $2,500. The Florida rental house is subject to the Florida Mortgage in the amount of $10,135 held by NewRez. In a liquidation, the Florida rental house would be worth approximately $150,000 net of expenses, of which the first $10,135 would go to NewRez and, nearly all of the balance would go to Midwest in satisfaction of the deficiency from the liquidation sale of the Hotel. The net equity in Florida house and the 2001 Chevrolet truck are less than $25,000, before Chapter 7 administrative expenses.

The total liquidation value of all assets of all Debtors is less than $25,000. The fair market values are much higher, so long as the Hotel remains in business.

# EXHIBIT C

The Debtors' projected disposal income and expenses of the five (5) year term of the Plan are set forth on the attached Spreadsheet.

The Debtors project sufficient disposal income over five (5) years to make the payments to creditors required by the Plan.

| Consolidated | | | | | |
|---|---|---|---|---|---|
| Accounts | 2025 | 2026 | 2027 | 2028 | 2029 |
| 40000 Room Revenue | $ 252,148 | $ 264,755.91 | $ 277,993.71 | $ 291,893.39 | $ 306,488.06 |
| 41000 Food & Beverage Revenue | $ 163,603 | $ 171,783.63 | $ 180,372.81 | $ 189,391.45 | $ 198,861.02 |
| 90000 Snyder Tavern Private Club | $ 60,238 | $ 63,249.58 | $ 66,412.06 | $ 69,732.67 | $ 73,219.30 |
| Total Income | $ 475,990 | $ 499,789.12 | $ 524,778.58 | $ 551,017.51 | $ 578,568.38 |
| Total Cost of Goods Sold | $ 70,569 | $ 74,097.45 | $ 77,802.32 | $ 81,692.44 | $ 85,777.06 |
| 50000 Room Expenses | $ 10,000 | $ 10,500.00 | $ 11,025.00 | $ 11,576.25 | $ 12,155.06 |
| 51000 Food & Beverage | $ 12,043 | $ 12,644.86 | $ 13,277.10 | $ 13,940.95 | $ 14,638.00 |
| 60000 Administration & General Expenses | $ 16,236 | $ 17,048.22 | $ 17,900.63 | $ 18,795.67 | $ 19,735.45 |
| 62000 Insurance | $ 48,398 | $ 50,817.77 | $ 53,358.66 | $ 56,026.59 | $ 58,827.92 |
| 62710 A&G - County Property Tax | $ 18,000 | $ 18,900.00 | $ 19,845.00 | $ 20,837.25 | $ 21,879.11 |
| A&G Payroll | $ 112,457 | $ 118,079.87 | $ 123,983.86 | $ 130,183.06 | $ 136,692.21 |
| 64000 Property Operations & Maintenance | $ 16,439 | $ 17,260.52 | $ 18,123.55 | $ 19,029.72 | $ 19,981.21 |
| 65000 Utilities | $ 40,626 | $ 42,657.76 | $ 44,790.65 | $ 47,030.18 | $ 49,381.69 |
| 68000 Sales & Marketing | $ 1,882 | $ 1,976.57 | $ 2,075.40 | $ 2,179.17 | $ 2,288.13 |
| Total Expense - Pre Bankruptcy Expenses | $ 422,250 | $ 439,583 | $ 457,782 | $ 476,891 | $ 496,956 |
| Debtors' Counsel fees (Paid over 12 months) | $ 19,998 | $ - | $ - | $ - | $ - |
| Midwest Bank Counsel fees (Paid over 12 months) | $ 19,998 | | | | |
| Hotel Unsecured Creditors (Paid over 36 months) | $ 4,332 | $ 4,548.60 | $ 4,776.03 | $ - | $ - |
| Pamela Streeter Management Pay ($750 per month) | $ 9,000 | $ 9,000 | $ 9,000 | $ 9,000 | $ 9,000 |
| Total Expenses - Post Bankruptcy Expenses | $ 475,578 | $ 453,132 | $ 471,558 | $ 485,891 | $ 505,956 |
| Net Income | $ 411 | $ 46,657 | $ 53,220 | $ 65,126 | $ 72,613 |
| Pamela Unsecured Creditors (Paid from Pamela Streeter salary) | $ 7,824 | $ 7,824.00 | $ 7,824.00 | $ 7,824.00 | $ 7,824.00 |